## Luzerne County *v.* Goeckel, Appellant.

Argued March 6, 1961. Before Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ. (Rhodes, P. J., absent).

*Peter Paul Olszewski,* City Solicitor, for City of Wilkes-Barre, appellant.

*James T. Shea,* County Solicitor, for County of Luzerne, appellee.

OPINION BY ERVIN, J., March 22, 1961:

This is an amicable action of mandamus to determine whether defendant, Frank A. Goeckel, Treasurer of the City of Wilkes-Barre, must refund the sum of $3,184.52 paid to the city by plaintiff, County of Luzerne. At a regular meeting of the Luzerne County Commissioners held on December 23, 1959 the commissioners voted to divide the liquid fuels tax fund, amounting to $22,928.26, among the municipalities and boroughs according to population and mileage. Pursuant to the action of the commissioners, a check in the sum of $3,184.52 was forwarded to the then treasurer of said city. The check was deposited in a bank to the credit of Frank A. Goeckel, City Treasurer, Liquid Fuels Tax Fund, Wilkes-Barre City Treasurer. On February 8, 1960 plaintiff advised defendant that said disbursement had been made contrary to the provisions of the Liquid Fuels Tax Act of 1931, May 21, P. L. 149, as amended, 72 PS §2611a et seq., and demanded that defendant remit said sum to the Treasurer of Luzerne County. The defendant failed to comply and this amicable action was then filed.

The applicable portion of §10 of the Liquid Fuels Tax Act of 1931, May 21, P. L. 149, as amended, 72 PS §2611j, is as follows:

"(a) . . .

"All moneys received by the counties hereunder shall be deposited and maintained in a special fund designated as the 'County Liquid Fuels Tax Fund' into which no other moneys shall be deposited and commingled, except in any county which does not have sufficient money in such special fund to provide for payments designated in the current annual budget for payment from such special fund for the purposes of construction, reconstruction, maintenance and repair of county-owned roads, highways and bridges, prop-

erty damages, interest and principal payments on road or bridge bonds, or sinking fund charges for such bonds becoming due within the current calendar year. The county, for the purpose of such payments and such payments only, may borrow and place in such special fund moneys, not in excess of the liquid fuels tax funds to be received during the current calendar year, and all such loans shall be repaid from such special fund before the expiration of the current calendar year and not thereafter. Moneys so received and deposited shall be used only for the purpose of construction, reconstruction, maintenance, and repair of roads, highways and bridges, including the payment of property damage, now due or hereafter to become due, occasioned by or the relocation or construction of highways and bridges, and for the payment of interest and sinking fund charges on bonds issued or used for highways and bridge purposes, or on so much of any bonds as have been used for such purposes, and all payments made by any county, either directly or indirectly, prior to the first day of January, one thousand nine hundred and forty-six, for any or all such purposes are hereby validated: Provided, That no expenditures from the county liquid fuels tax fund shall be made by the county commissioners for new construction on roads or bridges without first having obtained the approval of the plans for such construction from the Department of Highways: And provided further, That the county commissioners shall not allocate moneys from the county liquid fuels tax fund to any political subdivision within the county, until the application and the contracts or plans for the proposed expenditures have been made on forms, prescribed, prepared and furnished, and first approved by the Department of Highways. The county commissioners of each county shall make to the Department of Highways, on or before the fifteenth day of January and

July for the periods ending December thirty-first and June thirtieth, respectively, of each year, on forms prescribed, prepared, and furnished by the Department of Highways, a report showing the receipts and expenditures of such moneys received by the county, from the Commonwealth under the provisions of this section. Copies of such reports shall be transmitted to the department and to the Department of the Au-. ditor General for audit. Upon the failure of the county commissioners to file any one of such reports, or: to make any payments, allocations or expenditures, in compliance with the provisions of this section, the department shall withhold further payments to the county out of the Liquid Fuels Tax Fund until the delinquent report is filed, transmitted, or said moneys allocated, or said expenditures for the prior six months are approved by the Department of Highways.

"(b) The county commissioners may allocate and apportion moneys from the county liquid fuels tax fund to the political subdivisions within the county in the ratio as provided in this subsection: Provided, however, That when the unencumbered balance in the county liquid fuels tax fund is greater than the receipts for the twelve months immediately preceding the date of either of said reports the county commissioners shall notify the said political subdivisions to make application within ninety (90) days for participation in the redistribution of the said unencumbered balance, which redistribution shall be effected within one hundred twenty (120) days of the date of either of said reports, and distribute the said unencumbered balance in excess of fifty per cent (50%) of the receipts for the previous twelve months aforesaid to the said political subdivisions making application therefor in the following manner: fifty per cent (50%) of said moneys shall be allocated and apportioned among the political subdivisions within the county in the

ratio which the total mileage of all roads and streets, maintained by the several political subdivisions making application, bears to the total mileage of all such roads and streets, maintained by such political subdivisions in the county as of January first of the year in which an allocation is made, and: Provided further, That the remaining fifty per cent (50%) of said moneys shall be allocated and apportioned among the same subdivisions on a population basis in the ratio which the population in each such division of the county, making applications, bears to the total population of such political subdivisions: . . . ."

The court below ordered the defendant to remit to the plaintiff the sum of $3,184.52, for the reason that the payment was made contrary to the provisions of the Liquid Fuels Tax Act above quoted. We are of the opinion that the moneys of this fund could not be paid by the county to any political subdivision thereof "until the application and the contracts or plans for the proposed expenditures have been made on forms, prescribed, prepared and furnished, and first approved by the Department of Highways." In subsection (a) of the act above quoted this provision is clearly made a condition precedent to the allocation of moneys from the county liquid fuels tax fund to any political subdivision of the county. Counsel for the appellant argues that this provision applies only to new construction. He argues that subsection (b) specifically grants to the county commissioners the discretion of allocating and apportioning moneys from the liquid fuels tax fund to political subdivisions in the county in a specific ratio as spelled out in subsection (b). He then states: "If the statute contemplated that apportions must be made and approved by the Department of Highways prior to any allocation; then it seems that subsection (b) should have contained some kind of provision qualifying the granting or mak-

ing of the allocation or apportionment of the monies from the liquid fuels tax fund." Subsection (b) does exactly that. It states: ". . . fifty per cent (50%) of said moneys shall be allocated and apportioned among the political subdivisions within the county in the ratio which the total mileage of all roads and streets, maintained by the several political subdivisions *making application,* bears to the total mileage of all such roads and streets, maintained by such political subdivisions in the county. . . ." (Emphasis supplied) It also provides "That the remaining fifty per cent (50%) of said moneys shall be allocated and apportioned among the same subdivisions on a population basis in the ratio which the population in each such division of the county, *making applications,* bears to the total population of such political subdivisions. . . ." (Emphasis supplied)

The portions of subsection (b) just quoted clearly reveal that only the subdivisions *making application* were to constitute the numerator of the fraction.

In interpreting this same act our Supreme Court, in *Com. ex rel. McLaughlin v. Erie County,* 375 Pa. 344, 348, said: "Before the County could be forced to make an allocation from the County fund to the plaintiff, it was incumbent upon the latter to first secure the above stated approval of the State Department of Highways.

". . . Approval by the Highway Department is a condition precedent to any distribution of this fund by a county to any one of its political subdivisions, whether the resolution of the Commissioners precedes or follows the approval by the Highway Department. While the forms supplied by the Highway Department may be lacking in clarity as to procedure, the Act itself clearly prohibits any allocation until the applicant political subdivision as a prerequisite obtains the prescribed approval by the Highway Department."

While the *McLaughlin* case was one in which the City of Erie attempted to mandamus the county to make an allocation of the fund and the present case is one in which the county is making an allocation without first requiring applications from the political subdivisions, accompanied by contracts or plans approved by the Department of Highways, we do not believe that this should make any difference.

The evident purpose of the act is to require prior approval by the Department of Highways of the contracts or plans for the proposed expenditures. Undoubtedly the legislature was endeavoring to prevent an unwise expenditure of the money. Supervision of the projects was therefore given to the Department of Highways. Furthermore, some municipalities might not be in a position to use the money in a particular year and it would be foolish to allot money to them under such circumstances.

Order affirmed.